**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GUILLERO R. MEDRANO | ) |
| Plaintiff | ) CIVIL ACTION |
| v. | ) |
| | ) |
| BAYVIEW LOAN SERVICING, LLC; OCWEN LOAN | ) |
| SERVICING, LLC; MRF ILLINOIS, ONE LLC | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

### COMPLAINT

NOW COMES the Plaintiff, GUILLERMO R. MEDRANO., by and through his attorneys of the LAW OFFICE OF HERBERT HILL, and complaining against the Defendants states as follows:

### NATURE OF THE ACTION

1.      This is an action by a consumer seeking damages and costs against Bayview Loan Servicing, LLC, Ocwen Loan Servicing, LLC, and MRF Illinois One, LLC for violations of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) (Count I); Real Estate Settlement Procedures Act, ("RESPA") (Count II); the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 et. seq. (Count III); and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 et. seq. (Count IV); and Breach of Contact (COUNT V).

### JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over Medrano's RICO claims pursuant to 28 U.S.C. § 1331, 1337, 12 U.S.C. §2605 and 18 U.S.C. § 1964.  Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

3.       Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and/or (d) because Medrano and Defendants are citizens of different states and the individual matter in controversy between them exceeds $75,000, exclusive of interests and costs.

4.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Medrano resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions occurred in this District.

## PARTIES

5.       Plaintiff GUILLERMO R. MEDRANO ("Medrano") is natural person residing in the Northern District of Illinois.

6.       Defendant BAYVIEW LOAN SERVICING, LLC ("Bayview") is a Florida corporation with its principal place of business in Florida. Bayview is a foreign company in the business of servicing loans and debt collection across the country, including Illinois.

7.       Defendant, OCWEN LOAN SERVICING, LLC ("Ocwen") is a financial institution with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33146. Defendant transacts business in Illinois. Defendant's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8.       Ocwen is a loan servicing company that is in the business of purchasing and servicing mortgage loans which are in default. According to Defendant's website, "Ocwen is the industry leader in servicing high-risk loans." See www.ocwen.com, "About Us: Our Company." http://www.ocwen.com/our-company (last visited August 5, 2015).

9.       Ocwen uses the mails and telephone system in conducting its business.

10.      Defendant MRF Illinois One, LLC ("MRF") is a limited liability company chartered under Delaware law with principal offices at 120 S. LaSalle Street, Suite 1850,

Chicago, IL 60603. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

11.     MRF is engaged in the business of acquiring allegedly defaulted mortgage loans originally owed to others and collecting such loans.

**BACKGROUND**

       **A.**       **The Making Home Affordable Program**

12.     The government passed the Emergency Economic Stabilization Act (Act), 12 U.S. C. §§ 5201 which provided a $700 billion bail out to the banks.  The Act, in part, delegated authority to the U.S. Treasury to provide taxpayer money to banks, in return for the banks' agreement to participate in programs designed to assist struggling borrowers. 12 U.S.C § 5219. One such program was the Obama Administration's Making Home Affordable Modification Program. (HAMP).

13.     To participate in HAMP for Non-GSE Mortgages, the servicer must register and execute a Servicer Participation Agreement (SPA), related documents, and, if applicable, one or more Service Schedules with the Program Administrator on or before October 3, 2010. The SPA governs servicer participation in HAMP for all Non-GSE Mortgages.

14.     The entity that has the direct contractual obligation to the investor to perform the servicing functions is the entity that will formally elect to participate in MHA by signing the SPA.

15.     On September 9, 2010, Ronald Faris, President of Ocwen executed a SPA, thereby making Ocwen a participating servicer in HAMP. Upon information and belief, Ocwen received $1,835,624,254 for its share from the bailout.

16.      On April 27, 2010, Christopher Campbell, Senior Vice-President of Bayview executed a SPA, thereby making Bayview a participating servicer in HAMP.

17.     The SPA executed by Mr. Faris and Mr. Campbell incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of Participating Servicers. These documents together are known as the "Program Documentation" (SPA at ¶ 1.A.), and are incorporated by reference herein.

18.     The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services." (SPA at ¶¶1.A. 2.A)  As part of the Program Documentation, the U.S. Treasury has released the Making Home Affordable Program Handbook ("Handbook") for Servicers of Non-GSE Loans, which is periodically updated. The Handbook in effect at the time summary judgment was entered Medrano in state court was Version 4.4, which became effective on March 3, 2014. The Handbook in effect at the time Medrano's home was sold was Version 4.5, which became effective on June 1, 2015.

19.     Section 3 of the Handbook  entitled "Protections against Unnecessary Foreclosure" provides that a Servicer like Ocwen cannot refer a loan to foreclosure unless and until one of the following exists: (a) The borrow is evaluated for HAMP and is determined to be ineligible; or (b) The borrower is offered at TPP, but fails to make current trial period payments; or (c) The Servicer has established Right Party Contact including two written requests requesting information from the borrower, and has otherwise met the Reasonable Effort solicitation standard, and the borrower has failed to respond; or (d) the Servicer has satisfied the Reasonable Effort solicitation standard without making Right Party contact; or (e) the borrower indicates that he or she is not interested in pursuing a HAMP  modification; or (f) the Servicer has resolved the escalated case pursuant to Section 3.3 of Chapter 1 of the Handbook Guidelines.

20.     Ocwen and/or Bayview was required to stay the sale prior to it being sold on November 25, 2015.

**B.     Consumer Financial Protection Bureau**

21.     In early 2012, examinations by the Multistate Mortgage Committee, which is comprised of state financial regulators, identified potential violations at Ocwen. In addition, the Federal Trade Commission referred its investigation of Ocwen to the Consumer Financial Protection Bureau ("CFPB") after the Bureau opened in July 2011. The Bureau then teamed with state attorneys general and state regulators to investigate and resolve the issues identified.

22.     The CFPB and its partner states believed that Ocwen was engaged in significant and systemic misconduct that occurred at every stage of the mortgage servicing process.

23.     Specifically, the complaint alleged that Ocwen:

- Charged borrowers unauthorized fees for default-related services;
- Provided false or misleading information in response to consumer complaints;
- Failed to effectively assist, and in fact impeded, struggling homeowners trying to save their homes.
- Failed to provide accurate information about loan modifications and other loss mitigation services;
- Failed to properly process borrowers' applications and calculate their eligibility for loan modifications;
- Provided false or misleading reasons for denying loan modifications;
- Engaged in illegal foreclosure practices; and
- Provided false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good faith actively pursuing a loss mitigation alternative also offered by Ocwen.

24.     The CFPB, together with Multistate Mortgage Committee obtained a Consent Judgment on February 26, 2014 requiring the largest nonbank mortgage loan servicer in the

country, Ocwen Financial Corporation, and its subsidiary, Ocwen Loan Servicing, to provide $2 billion in first lien principal reduction to underwater borrowers.

25.     The consent order addresses Ocwen's misconduct during the mortgage servicing process.

26.     Ocwen was also required pay $125 million to the nearly 185,000 Ocwen, Litton, and Homeward borrowers who have already been foreclosed upon, and Ocwen must also adhere to significant new homeowner protections.

27.     As a result of the consent order, Ocwen must change the way it services mortgages to ensure that borrowers are protected from the illegal behavior that puts them in danger of losing their homes. To ensure this, the CFPB and the states proposed that Ocwen follow the servicing standards set up by the 2012 National Mortgage Settlement with the five largest banks.

28.     In January 2013, the CFPB released new rules on mortgage servicing that applies to Ocwen. The standards that Ocwen must adhere to according to this court order are in addition to the protections offered to consumers under the new rules effective January 10, 2014.

### C.     Dual Tracking

29.     The CFPB released the national servicing standards rules changing the mortgage servicing standards that apply under both the Real Estate Settlement Procedures Act (RESPA, Regulation X)

30.     Regulation X's loss mitigation rule limits mortgage servicers' "dual tracking" practices. Dual tracking refers to a common servicer practice of proceeding with foreclosure while evaluating a borrower for loss mitigation options.

31.     If a borrower who has never had a complete loss mitigation application evaluated submits a complete application that is received by the servicer more than thirty-seven days before a scheduled foreclosure sale. If a complete loss mitigation application was received prior to

foreclosure judgment or order of sale, then these actions should be stayed until the application has

been evaluated and notice of decision given.

32.     More specifically, § 1024.41(g) prohibits a servicer from taking these actions

related to the sale of the property unless:

- The servicer has sent the borrower a notice under § 1024.41(c)(1)(ii)104 stating that the borrower is not eligible for any loss mitigation option and the appeal process under § 1024.41(h)105 is not applicable, the borrower has not requested an appeal within the applicable time period, or the borrower's appeal has been denied;

- The borrower rejects all loss mitigation options offered by the servicer; or

- The borrower fails to perform under an agreement on a loss mitigation option.

Reg. X, 12 C.F.R. § 1024.41(f)(2) (effective Jan. 10, 2014).

## TOLLING THE STAUTE OF LIMITATIONS
### *Fraudulent Concealment Tolling*

33.     Any applicable statute of limitations has been tolled by Bayview, Ocwen, and

MRF's active concealment and the misleading actions as alleged herein. Medrano could not have

reasonably discovered the true nature of Defendant's actions and its scheme to defraud until the

May12, 2014 assignment alleging Robert G. Hall was the Vice President of Bayview Loan

Servicing, LLC. It is then when it was discovered that Robert G. Hall also alleged to be the Vice

President of Banco Popular North America on the June 23, 2011 assignment.

34.     Bayview, Ocwen, and MRF knowingly, affirmatively, and are still actively

concealing the true nature of who owns Medrano's Note and Mortgage, when and if it was

assigned, and if so, to whom. Furthermore, they have fraudulently produced assignments since the

start of litigation in the state court foreclosure proceeding.

**FACTS**

35.     Plaintiff Medrano is the owner of the single family residence commonly known as

509 Marie Drive, South Holland, IL 60473. ("the Property")

36.     On January 6, 2006, Medrano entered into a Note with Banco Popular North

America as the lender. The Note was secured by a Mortgage with Banco Popular North

America. Exhibit 1

37.     On March 27, 2012, Bayview filed a complaint to foreclose in regards to the

Property.

38.     Attached to the complaint was an assignment from Banco Popular North

America dated June 23, 2011, purportedly conveying, granting, selling, assigning, and transferring

the mortgage along with the note to Bayview Loan Servicing, LLC. Exhibit 2

39.     The assignment was prepared by E. Lance/NTC and signed by Robert G. Hall who

purportedly was the Vice President of Banco Popular North America.

40.     Upon information and belief, Banco Popular North America was not registered to

do business in the State of Illinois. Exhibit 3 and Exhibit 4

41.     On May 15, 2012, Bayview Loan Servicing, LLC purportedly granted, conveyed

and assigned Medrano's loan to Bayview Fund Acquisitions, LLC. Exhibit 5

42.     The assignment was created by Bayview Loan Servicing, LLC.

43.     On May 17, 2012, Bayview Fund Acquisitions, LLC purportedly granted,

conveyed and assigned Medrano's loan to MRF Illinois One, LLC. Exhibit 6

44.     The assignment was created by Bayview Loan Servicing, LLC.

45.     On March 22, 2013 MRF Illinois One, LLC created an assignment assigning

Medrano's loan to blank. Exhibit 7

46.     On May 2, 2014, an order was entered allowing Ocwen Loan servicing, LLC on

behalf of MRF Illinois One, LLC to proceed in the state foreclosure complaint as plaintiff. Exhibit
8

47.    On May 12, 2014, Bayview Loan Servicing, LLC purportedly granted,
conveyed and assigned Medrano's loan to MRF Illinois One, LLC in c/o Ocwen Loan Serving,
LLC. Exhibit 9

48.    The assignment was prepared by David Santa and signed by Robert G. Hall who
purportedly was the Vice President of Bayview Loan Servicing, LLC. Exhibit 10

49.    On or about September 15, 2014, Ocwen produced a statement showing that
Medrano's account had been assessed multiple property inspection and BPO fees. Exhibit 11

50.    On October 9, 2014, Nicole Boutin of Ocwen prepared a loss mitigation affidavit
alleging that Medrano was denied for a loan modification because the owner of his loan did not
participate in Governments Hamp Program. In addition, Medrano was denied because incomplete
documentation was not received. Exhibit 12

51.    On November 24, 2014 a judgment was entered against Medrano.

52.    On July 16, 2015, Ocwen sent Medrano correspondence alleging $212, 252.37 was
due and owing which included $6,327.08 in past due fees/other charges. Exhibit 13

53.    On August 5, 2015, Medrano applied for a loan modification with Ocwen.

54.    On or around October 23, 2015 Ocwen requested some additional information in
order to continue to review Medrano for a loan modification.

55.    On November 5, 2015, the documents Ocwen requested were faxed.

56.    However, on November 25, 2015, while Medrano was still being reviewed for
loss mitigation, his home was sold at a sheriff's sale.

57.    As a result of the conduct of Bayview, Ocwen, as agent of MRF, plaintiff suffered
damages, including:

a. Damage to credit;

b. Mental anguish; and

c. Time and money spent attempting to correct the problem.

58.    Ocwen's conduct was part of a pattern. In addition to the repeated failure to respond to plaintiff's requests, Ocwen is party to several consent orders and judgments with law enforcement and regulatory officials regarding its failure to respond to borrower inquiries, including:

a. December 2012 New York State Department of Financial Services consent order;

b. December 2013 consent order with the Consumer Financial Protection Bureau and multiple state Attorneys General.

59.    As a result of these legal proceedings, MRF was on notice that Ocwen was likely to engage in improper conduct towards borrowers such as Medrano.

## RICO ALLEGATIONS
## SCHEME TO DEFRAUD

60.    Bayview engaged in a scheme to in which it created in unfair, deceptive, and fraudulent debt-collection practices when they created fraudulent assignments and filed an illegitimate foreclosure in an attempt to steal his property.

61.    Bayview carried out this scheme by creating fraudulent assignments, charging bogus fees, and then purportedly selling and assigning Medrano's loan multiple times to cover up the scheme in an attempt to steal Medrano's property and make a profit.

## THE ENTERPRISE

62.    The following persons constitute "persons" within the meaning of 18 U.S.C. §

1961 (3). Bayview Loan Servicing, LLC ("Bayview") and Ocwen Loan Servicing, LLC. ("Ocwen").

63.     Each person above was and is responsible for operating and managing the business affairs of the enterprise described herein.

64.     For instance, as alleged herein, Bayview authorized its as employees to create fraudulent assignments and directed its employees through a computerized system to impose and collect improper fees and assist in filing false mortgage papers to effectuate the improper foreclosure.

65.     These activities, described above, also describe the manner with which each Defendant conducted the affairs of the association in fact enterprise enumerated herein.

66.     In order to foreclose on property belonging to Medrano, Defendants employed a system that asserted demonstrably false claims, namely the documentation that Defendants relied upon to effectuate the foreclosure did not show a viable chain of title.

67.     Collectively, Bayview, Ocwen, MRF constitute an enterprise engaged in and whose activities affect interstate commerce. All of the enterprises described in this paragraph are an "individual, partnership, corporation, association, or other legal entity" and are therefore valid enterprises within the definition of § 1961(3) of the RICO Act.

**PATTERN OF RACKETEERING AND PREDICATE ACTS**

68.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343(relating to wire fraud). As set forth below, Defendants have engaged, and continue to engage, in conduct violating each of these laws to effectuate their scheme.

69.     The pattern of racketeering activity, as evidenced by the predicate acts, began in at least 2011, which is when Robert G. Hall who allegedly was the Vice President of Banco Popular

North America knew he was signing a fraudulent assignment. Robert G. Hall has signed other assignments and release of mortgages on behalf of other companies while being employed at Bayview which were false and deceptive. Exhibit 13. In addition, all of the assignments created as well as the imposition of unlawful, deceptive and fraudulent fees assessed to Medrano's loan shows a pattern of racketeering.

70.     The pattern of racketeering activity has a viable threat of continuity, because Bayview, Ocwen and MRF continue to engage in this type of behavior on loans that it services that are in default and they are continuing to make huge profits.

## VIOLATIONS OF §1341 AND §1343, MAIL AND WIRE FRAUD

71.     Defendant Bayview and Ocwen agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the scheme of defrauding Medrano and stealing his property.

72.     For purposes of executing and/or attempting to execute the above described scheme to fraudulently foreclose upon Medrano's property, the Defendants, in violation of 18 U.S.C. §1341, placed or caused to be placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial and interstate carriers, including but not limited to falsified, fraudulent, and legally defective documents.

73.     The practices described in this complaint could not have occurred without the use of the U.S. Mail and various wires including telephones and the Internet. The overwhelming majority of the evidence of these mailings and wires are in the possession of the Defendants and are not public documents. However, specific instances of such fraudulent mails and/or wires regarding Medrano's mortgage include all of the court filings that included the fraudulent

- 12 -

assignments, the statements mailed to Medrano, and the affidavits filed with the Clerk of Cook County.

**COUNT I**
**VIOLATION OF RICO 18 U.S.C. § 1962(c)**
**(Bayview, Ocwen, MRF)**

74.     Medrano incorporates all preceding paragraphs as if fully set forth herein.

75.     Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

76.     In violation of 18 U.S.C. §1962(c), Bayview, Ocwen, and MRF conducted, or participated in the conduct of an enterprise through a pattern of racketeering activity and through the use of wire and mail by: 1) filing a foreclosure against Medrano despite its lack of interest in the mortgage and Note; 2) drafting and filing fraudulent mortgage assignments thus misrepresenting his loan had been properly assigned to another entity; 3) recording the assignments with the Cook County Recorder's office; 4) seeking judgment in Bayview and Ocwen's favor by relying on the assignments and property inspection fees and 5) assessing multiple property inspection and BPO fees to his account all done in part of a scheme or artifice to defraud Medrano.

77.     Bayview, Ocwen and MRF communicated with Medrano, with each other, and with the Cook County Court, Clerk, and Recorders office via mail, telephone, wire, and electronic mail communications within a ten-year period preceding the date of this complaint.

78.     Medrano has been injured because he has to incur attorney fees to defend the

- 13 -

Foreclosure, his home has been sold, and he has had the fees assessed to his account based on the Defendants scheme to defraud him and take his property.

WHEREFORE, Medrano respectfully requests that this Honorable Court grant:

(1) Statutory damages;

(2) Litigation expenses and costs of suit;

(3) Treble Damages;

(4) Attorney fees and

(5) Such other or further relief as the Court deems proper.

**COUNT II**
**RESPA (Dual Tracking)**
**OCWEN and BAYVIEW**

79.    Medrano incorporates all preceding paragraphs as if fully set forth herein.

80.    Regulation X's loss mitigation rule limits mortgage servicers' "dual tracking" practices.

81.    Bayview and Ocwen violated RESPA when a judgment was entered against Medrano and his home was sold, because he was in the process of being reviewed for loss mitigation.

82.    In violation of its obligation under Regulation X, Bayview and Ocwen failed to halt the foreclosure action with respect to Medrano being reviewed for loss mitigation.

WHEREFORE, Medrano respectfully requests that this Honorable Court grant:

(1) Statutory damages under 12 U.S.C. §2605(f);

(2) Litigation expenses and costs of suit;

(3) Attorney fees and

(4) Such other or further relief as the Court deems proper.

## COUNT III
## CONSUMER FRAUD ACT (UNFAIRNESS)
## OCWEN and BAYVIEW

83.     Medrano incorporates all preceding paragraphs as if fully set forth herein.

84.     Medrano meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

85.     Bayview and Ocwen violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.

86.     It was unfair for Bayview and Ocwen to assess the fees to Medrano's loan and continue dual tracking.

87.     It was unfair for Bayview to do the following:

      i.    Create fraudulent assignments;
      ii.   To allege Robert G. Hall worked for Banco Popular North America when he worked for Bayview;
    iii.   Charging and billing Medrano property inspection fees;
    iv.   And proceeding with a foreclosure without properly evaluating Medrano for loss mitigation.

88.     It was unfair for Ocwen to do the following:

      i.    To dual track;
      ii.   Unfairly review Medrano for a loan modification;
    iii.   Charging and billing Medrano property inspection fees;
    iv.   To proceed with a foreclosure sale without properly evaluating Medrano for loss mitigation.

89.     Medrano was in constant fear and worry of losing his home and having his family displaced.

90.     Bayview and Ocwen caused Medrano substantial damage in that, among other things: (a) Medrano was unfairly subjected to additional credit damage; (b) he was deprived of the suspension of foreclosure proceedings and his right to be evaluated for loan modifications, and thus denied the time and resources to allow him to fairly negotiate a plan to keep the home; and (c) excessive and unnecessary interest, and his home has been sold.

91. Bayview and Ocwen's conduct occurred in the course of trade or commerce.

92. Bayview and Ocwen engaged in unfair conduct by violating the public policy of Illinois and the federal guidelines enacted by Congress. Bayview and Ocwen were aware Medrano was trying to save his home and failed to properly review and consider him for loss mitigation programs prior to initiating the foreclosure and conducting a sale.

93. All of Bayview and Ocwen's actions were the proximate cause of the damages to Medrano and he has been injured because he has incurred legal costs and fees to defend a foreclosure action, his home has been sold, and he has a judgment entered against him.

94. An award of punitive damages is appropriate because Bayview and Ocwen's conduct was willful, and wanton, and it showed a reckless disregard for the rights of Medrano since the foreclosure action in state court has been initiated.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

## COUNT IV
## CONSUMER FRAUD ACT (DECEPTION)
## OCWEN and BAYVIEW

95. Medrano incorporates all preceding paragraphs as if fully set forth herein.

96. Medrano meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

97. Bayview and Ocwen violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.

98. It was deceptive for Bayview and Ocwen to assess the fees to Medrano's loan and continue

dual tracking.

99.     It was deceptive for Bayview to do the following:

     i.    Create fraudulent assignments;
    ii.    To allege Robert G. Hall worked for Banco Popular North America when he worked for Bayview;
   iii.    Charging and billing Medrano property inspection fees;
   iv.    And proceeding with a foreclosure without properly evaluating Medrano for loss mitigation.

100.    It was deceptive for Ocwen to do the following:

     i.    Unfairly review Medrano for a loan modification;
    ii.    Send statements in the mail that included unlawful and deceptive fees;
   iii.    Charging and billing Medrano property inspection fees;
   iv.    To assign his loan without properly reviewing him for loss mitigation;
    v.    To proceed with a foreclosure sale without properly evaluating Medrano for loss mitigation;

101.    Medrano is in constant fear and worry of losing his home and having his family displaced.

102.    Bayview and Ocwen caused Medrano substantial damage in that, among other things: (a) Medrano was unfairly subjected to additional credit damage; (b) he was deprived of the suspension of foreclosure proceedings and his right to be evaluated for loan modifications, and thus denied the time and resources to allow him to fairly negotiate a plan to keep the home; and (c) excessive and unnecessary interest, and his home has been sold.

103.    Bayview and Ocwen's conduct occurred in the course of trade or commerce.

104.    Bayview and Ocwen engaged in unfair conduct by violating the public policy of Illinois and the federal guidelines enacted by Congress. Bayview and Ocwen was aware Medrano was trying to save his home and failed to properly review and consider him for loss mitigation programs prior to initiating the foreclosure and conducting a sale.

- 17 -

105.    All of Bayview and Ocwen's actions were the proximate cause of the damages to Medrano and he has injured because he has incurred legal costs and fees to defend a foreclosure action, his home has been sold, and he has a judgment entered against him.

106.    An award of punitive damages is appropriate because Bayview and Ocwen's conduct was willful, and wanton, and it showed a reckless disregard for the rights of Medrano since the foreclosure action in state court has been initiated.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

**COUNT V**
**BREACH OF CONTRACT**
**OCWEN and BAYVIEW**

107.    Medrano incorporates all preceding paragraphs as if fully set forth herein.

108.    Under Illinois law, every contract implies a covenant of good faith and fair dealing.

109.    Medrano has a valid and enforceable mortgage contract with Bayview and Ocwen in the form of a mortgage and note.

110.    Medrano substantially performed his duties under the contract by keeping the property occupied, secure, and safe.

111.    Bayview and Ocwen are in material breach of the subject note, mortgage, and loan modification for its:

a.      charging of unauthorized fees and costs;

b.      failure to provide accurate repayment and reinstatement figures;

      c.     failure to provide an accurate accounting; and

      d.     failure to conduct its affairs in good faith.

112.    Bayview and Ocwen further breached the express terms of the subject note, mortgage, and its implied duty of good faith and fair dealing by charging and collecting unauthorized costs and fees from Medrano that were not authorized by the subject mortgage and note.

1113.    Bayview and Ocwen's breach of the subject contract has caused Medrano damages that consist of illegal fees, charges, interest, damage to his credit report, loss of equity in his home, emotional distress, the sale of his home, and mental anguish.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

    (1)     Find Bayview and Ocwen materially breached the mortgage contract;

    (2)     award Medrano his actual damages to be proven at trial;

    (3)     award Medrano his reasonable fees and costs; and

    (4)     award Medrano other relief this Honorable Court deems equitable and just.

**JURY DEMAND**
Medrano demands trial by jury.

                    Respectfully submitted,

                    By: /s/ Herbert Hill
                    One of Mr. Medrano's Attorneys

Herbert Hill
The Law Office of Herbert Hill
605 N. Broadway
Aurora, Illinois 60505
Atty No: 1214853
P:  630-742-0374