**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GUILLERMO R. MEDRANO | ) |
|                Plaintiff | ) CIVIL ACTION |
|          v. | ) |
| | ) |
| BAYVIEW LOAN SERVICING, LLC; OCWEN LOAN | ) |
| SERVICING, LLC; MRF ILLINOIS, ONE LLC | ) JURY TRIAL DEMANDED |
|             Defendants. | ) |

**AMENDED COMPLAINT**

NOW COMES the Plaintiff, GUILLERMO R. MEDRANO, by and through his

attorneys of the LAW OFFICE OF HERBERT HILL, and complaining against the Defendants

states as follows:

**NATURE OF THE ACTION**

1.      This is an action by a consumer seeking damages and costs against Bayview Loan

Servicing, LLC, Ocwen Loan Servicing, LLC, and MRF Illinois One, LLC and Kondaur Capital

Corporation for violations of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18

U.S.C. § 1962(c) (Count I); Real Estate Settlement Procedures Act, ("RESPA") (Count II); the

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 et. seq.

(Count III); and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815

ILCS 505/2 et. seq. (Count IV); Civil Conspiracy (Count V), and the Equal Credit Opportunity

Act (ECOA) (Count VI).

**JURISDICTION AND VENUE**

2.      This Court has federal question jurisdiction over Medrano's RICO claims pursuant

to 28 U.S.C. § 1331, 1337, 12 U.S.C. §2605 and 18 U.S.C. § 1964.  Supplemental jurisdiction

over the state law claims exists under 28 U.S.C. § 1367(a).

3.      Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and/or (d) because Medrano and Defendants are citizens of different states and the individual matter in controversy between them exceeds $75,000, exclusive of interests and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Medrano resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions occurred in this District.

**PARTIES**

5.      Plaintiff GUILLERMO R. MEDRANO ("Medrano") is natural person residing in the Northern District of Illinois.

6.      Defendant BAYVIEW ASSET MANAGEMENT, LLC ("BAM") is a full service mortgage investment firm that is headquartered at 4425 Ponce de corporation with its principal place of business in Coral Gables, Florida 33146 with additional locations in Pennsylvania and Texas.

7.      Defendant BAYVIEW LOAN SERVICING, LLC ("Bayview") is the servicing arm and wholly owned subsidiary of BAM with Blackstone Capital Partners, an affiliate of the Blackstone Group which was formed to be the servicing arm of BAM.

8.      At all times herein mentioned, both individually and collectively, and affiliates not herein named, are and were agents of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

9.      BAM and Bayview had actual ad/or constructive knowledge of the acts of each other, ad ratified, approved, joined in, and/or authorized the wrongful acts of each other, and or retained the benefits of said wrongful acts.

10.     BAM and Bayview aided and abetted, encouraged, and rendered substantial assistance to each other in committing the acts alleged herein all while knowingly and willfully

conspiring and engaging in a common enterprise by engaging in a common course of conduct to accomplish the wrongs complained herein to financially benefit the Defendant at the expense of the Plaintiff by engaging in this unlawful conduct.

11.     BAM and Bayview use the mails, telephone, and internet to conduct its business.

12.     Defendant, OCWEN FINANCIAL CORPORATION ("Ocwen Financial") is a Florida Corporation with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33146that maintains offices in Arizona, California, Florida, Georgia, and New York, with global operations in Canada, Germany, Uruguay, and India.

13.     Defendant, OCWEN LOAN SERVICING, LLC ("Ocwen") is a wholly-owned and controlled subsidiary of Ocwen Financial, ostensibly formed for the sole purpose of carrying out Ocwen Financials business, and shares the same business address as Ocwen Financial.

14.     Ocwen is a loan servicing company that is in the business of purchasing and servicing mortgage loans which are in default. According to Ocwen's website, "Ocwen is the industry leader in servicing high-risk loans." See www.ocwen.com, "About Us: Our Company." http://www.ocwen.com/our-company (last visited August 5, 2015).

15.     At all times herein mentioned, both individually and collectively, and affiliates not herein named, are and were agents of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

16.     Ocwen Financial and Ocwen had actual ad/or constructive knowledge of the acts of each other, ad ratified, approved, joined in, and/or authorized the wrongful acts of each other, and or retained the benefits of said wrongful acts.

17.     Ocwen Financial and Ocwen aided and abetted, encouraged, and rendered substantial assistance to each other in committing the acts alleged herein all while knowingly and willfully conspiring and engaging in a common enterprise by engaging in a common course of

conduct to accomplish the wrongs complained herein to financially benefit the Defendant at the expense of the Plaintiff by engaging in this unlawful conduct.

18.     Ocwen uses the mails and telephone system in conducting its business.

19.     Defendant MRF Illinois One, LLC ("MRF") is a limited liability company chartered under Delaware law with principal offices at 120 S. LaSalle Street, Suite 1850, Chicago, IL 60603. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

20.     MRF is engaged in the business of acquiring allegedly defaulted mortgage loans originally owed to others and collecting such loans.

21.     Defendant Kondaur Capital Corporation, One City Blvd, West Suite 1900, Orange California 92868 is a debt collector and is licensed by the collections Service Board of the Tennessee Department of Commerce and Insurance and does business in Illinois.

### A.      Consumer Financial Protection Bureau

22.     In early 2012, examinations by the Multistate Mortgage Committee, which is comprised of state financial regulators, identified potential violations at Ocwen. In addition, the Federal Trade Commission referred its investigation of Ocwen to the Consumer Financial Protection Bureau ("CFPB") after the Bureau opened in July 2011. The Bureau then teamed with state attorneys general and state regulators to investigate and resolve the issues identified.

23.     The CFPB and its partner states believed that Ocwen was engaged in significant and systemic misconduct that occurred at every stage of the mortgage servicing process.

24.     Specifically, the complaint alleged that Ocwen:

- Charged borrowers unauthorized fees for default-related services;
- Provided false or misleading information in response to consumer complaints;
- Failed to effectively assist, and in fact impeded, struggling homeowners

trying to save their homes.

- Failed to provide accurate information about loan modifications and other loss mitigation services;

- Failed to properly process borrowers' applications and calculate their eligibility for loan modifications;

- Provided false or misleading reasons for denying loan modifications;

- Engaged in illegal foreclosure practices; and

- Provided false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good faith actively pursuing a loss mitigation alternative also offered by Ocwen.

25.  The CFPB, together with Multistate Mortgage Committee obtained a Consent Judgment on February 26, 2014 requiring the largest nonbank mortgage loan servicer in the country, Ocwen Financial Corporation, and its subsidiary, Ocwen Loan Servicing, to provide $2 billion in first lien principal reduction to underwater borrowers.

26.  The consent order addresses Ocwen's misconduct during the mortgage servicing process.

27.  Ocwen was also required pay $125 million to the nearly 185,000 Ocwen, Litton, and Homeward borrowers who have already been foreclosed upon, and Ocwen must also adhere to significant new homeowner protections.

28.  As a result of the consent order, Ocwen was supposed change the way it services mortgages to ensure that borrowers are protected from the illegal behavior that puts them in danger of losing their homes.

29.  In January 2013, the CFPB released new rules on mortgage servicing that applies to Ocwen. The standards that Ocwen must adhere to according to this court order are in addition to the protections offered to consumers under the new rules effective January 10, 2014.

**B.** **Dual Tracking**

30.    The CFPB released the national servicing standards rules changing the mortgage servicing standards that apply under both the Real Estate Settlement Procedures Act (RESPA, Regulation X)

31.    Regulation X's loss mitigation rule limits mortgage servicers' "dual tracking" practices. Dual tracking refers to a common servicer practice of proceeding with foreclosure while evaluating a borrower for loss mitigation options.

32.    If a borrower who has never had a complete loss mitigation application evaluated submits a complete application that is received by the servicer more than thirty-seven days before a scheduled foreclosure sale. If a complete loss mitigation application was received prior to foreclosure judgment or order of sale, then these actions should be stayed until the application has been evaluated and notice of decision given.

33.    More specifically, § 1024.41(g) prohibits a servicer from taking these actions related to the sale of the property unless:

- The servicer has sent the borrower a notice under § 1024.41(c)(1)(ii)104 stating that the borrower is not eligible for any loss mitigation option and the appeal process under § 1024.41(h)105 is not applicable, the borrower has not requested an appeal within the applicable time period, or the borrower's appeal has been denied;

- The borrower rejects all loss mitigation options offered by the servicer; or

- The borrower fails to perform under an agreement on a loss mitigation option.

Reg. X, 12 C.F.R. § 1024.41(f)(2) (effective Jan. 10, 2014).

## TOLLING THE STAUTE OF LIMITATIONS
### *Fraudulent Concealment Tolling*

34.     Any applicable statute of limitations has been tolled by Bayview, Ocwen, and

MRF's active concealment and the misleading actions as alleged herein. Medrano could not have

reasonably discovered the true nature of Defendant's actions and its scheme to defraud until the

May 12, 2014 assignment alleging Robert G. Hall was the Vice President of Bayview Loan

Servicing, LLC. Robert G. Hall who works for Bayview previously alleged to be the Vice

President of Banco Popular North America on the June 23, 2011 assignment.

35.     Bayview, Ocwen, Kondaur, and MRF knowingly have conspired to financially

benefit each other at the expense of the Plaintiff by charging him fees that were in monthly

statements sent to him once his loan went into default (Ocwen and Bayview) as well as conspiring

with each other to avoid their responsibility and duty to properly review and modify the Plaintiff's

loan. (Ocwen, Kondaur, and MRF)

36.     Plaintiff, not sophisticated in real estate did not know he was being charged

monthly inspection fees, nor was he aware that his loan was being assigned by

### FACTS

37.     Plaintiff Medrano is the owner of the single family residence commonly known as

509 Marie Drive, South Holland, IL 60473. ("the Property")

38.     On January 6, 2006, Medrano entered into a Note with Banco Popular North

America as the lender. The Note was secured by a Mortgage with Banco Popular North

America. Exhibit 1

39.     On March 27, 2012, Bayview filed a complaint to foreclose in regards to the

Property without reviewing him for loss mitigation as required by the Making Home Affordable

guidelines.

40.     Attached to the complaint was an assignment from Banco Popular North America dated June 23, 2011, purportedly conveying, granting, selling, assigning, and transferring the mortgage along with the note to Bayview Loan Servicing, LLC. Exhibit 2

41.     The assignment was prepared by E. Lance/NTC and signed by Robert G. Hall who purportedly was the Vice President of Banco Popular North America.

42.     Banco Popular North America was not registered to do business in the State of Illinois. Exhibit 3 and Exhibit 4

43.     On May 15, 2012, Bayview Loan Servicing, LLC purportedly granted, conveyed and assigned Medrano's loan to Bayview Fund Acquisitions, LLC. Exhibit 5

44.     The assignment was created by Bayview Loan Servicing, LLC.

45.     On May 17, 2012, Bayview Fund Acquisitions, LLC purportedly granted, conveyed and assigned Medrano's loan to MRF Illinois One, LLC. Exhibit 6

46.     The assignment was created by Bayview Loan Servicing, LLC through its agent or Employee on its behalf.

47.     On March 22, 2013 MRF Illinois One, LLC created an assignment assigning Medrano's loan to blank. Exhibit 7

48.     On May 2, 2014, an order was entered allowing Ocwen Loan servicing, LLC on behalf of MRF Illinois One, LLC to proceed in the state foreclosure complaint as plaintiff. Exhibit 8

49.     On May 12, 2014, Bayview Loan Servicing, LLC purportedly granted, conveyed and assigned Medrano's loan to MRF Illinois One, LLC in c/o Ocwen Loan Serving, LLC. Exhibit 9

50.     The assignment was prepared by David Santa and signed by Robert G. Hall who purportedly was the Vice President of Bayview Loan Servicing, LLC. Exhibit 10

51. On or about September 15, 2014, Ocwen produced a statement showing that Medrano's account had been assessed multiple property inspection and BPO fees. Exhibit 11

52. On October 9, 2014, Nicole Boutin of Ocwen prepared a loss mitigation affidavit alleging that Medrano was denied for a loan modification because the owner of his loan did not participate in Governments Hamp Program which was false because Bayview participates in the Making Home Affordable Program, and it would or should have known this prior to the alleged 3/17/2014 denial. Further, if the owner of the loan did not participate in a Government HAMP, then the letters sent from the Relationship manager on 10/7/14, 12/12/13, and 6/12/13 would have misrepresented that the Plaintiff should submit an application to be reviewed for HAMP. In addition, Medrano was denied because incomplete documentation was not received. Exhibit 12

53. On November 24, 2014 a default judgment was entered against Medrano.

54. On July 16, 2015, Ocwen sent Medrano correspondence alleging $212, 252.37 was due and owing which included $6,327.08 in past due fees/other charges. Exhibit 13

55. On August 5, 2015, Medrano applied for a loan modification with Ocwen.

56. On or around October 23, 2015 Ocwen requested some additional information in order to continue to review Medrano for a loan modification.

57. On November 5, 2015, the documents Ocwen requested were faxed.

58. However, on November 25, 2015, while Medrano was still being reviewed for loss mitigation, his home was sold at a sheriff's sale without Ocwen sending him a proper denial letter.

59. On December 14, 2015, Kondaur Capital Corporation ("Kondaur") sent Plaintiff a letter informing him that Kondaur will be his new servicer. Exhibit 14

60. On May 24, 2016, Plaintiff applied for loss mitigation by submitting a loss mitigation application to Kondaur.

61.    On June 2, 2016 Kondaur sold Plaintiff's home without sending him a denial letter.

62.    As a result of the conduct of Bayview, Ocwen, MRF, and Kondaur, Plaintiff suffered damages, including:

>    a. Damage to credit;
>
>    b. Loss of equity;
>
>    c. Mental anguish;
>
>    d. Time and money spent attempting to correct the problem.

63.    Ocwen's conduct is a common pattern as it is its business practice to fail to properly review a borrower for a loan modification and to assess multiple property inspection fees that are unreasonable, unnecessary, and/or not performed as alleged. This pattern is common to Ocwen as evidenced by the several consent orders and judgments with law enforcement and regulatory officials regarding its failure to respond to borrower inquiries, including, but not limited to:

>    a. December 2012 New York State Department of Financial Services consent order;
>
>    b. December 2013 consent order with the Consumer Financial Protection Bureau and multiple state Attorneys General.

64.    As a result of the above legal proceedings, Ocwen Financial and Ocwen were on notice that Ocwen was likely to engage in improper conduct towards borrowers such as Medrano.

## RICO ALLEGATIONS
## SCHEME TO DEFRAUD

65.    Bayview and BAM engaged in a scheme to defraud by which it engaged in unfair, deceptive, and fraudulent debt-collection practices by creating fraudulent assignments which allowed a fraudulently procured a foreclose judgment centered around a flawed and/or invalid mortgage assignment. In addition, BAM and Bayview and its property inspection vendors formed

an -association-of-fact "enterprise" in which BAM and Bayview both violated RICO by charging Plaintiff monthly property inspection fees each and every month since he was in default, and sending him monthly statements which included these fees since November 2011 until it purportedly assigned Plaintiff's loan to Ocwen who then began servicing Plaintiff's loan. It was the intent of BAM and Bayview to conceal these fees from Plaintiff so that Bam, Bayview and its property inspector vendors would financially benefit from these fees being assessed to Plaintiff's loan. Bam, Bayview and its property inspector vendors would be guaranteed these fess only if Plaintiff's loan was sold at a foreclosure because if his loan was modified, these fees would be waived. Therefore, BAM, Bayview and its property inspector vendor had every incentive to not properly review and/or approve the Plaintiff for a loan modification prior to the initiation of foreclosure or foreclosure sale.

66.     Bayview and BAM carried out this scheme by creating fraudulent assignments, charging bogus fees, and then purportedly selling and/or assigning Medrano's loan multiple times to cover up the scheme in an attempt to steal Medrano's property and make a profit. Each time Plaintiff's loan was sold that BAM and or Bayview was the alleged owner, it made a profit off the sale of Plaintiff's loan.

67.     Ocwen Financial and Ocwen engaged in a scheme to defraud by which it engaged in unfair, deceptive, and fraudulent debt-collection practices when it created and had recorded a fraudulent mortgage assignment on June 9, 2014 which allowed a fraudulently procured a foreclose judgment centered around a flawed and/or invalid mortgage assignment. In addition, Ocwen Financial and Ocwen and its property inspection vendors formed an -association-of-fact "enterprise" in which Ocwen Financial and Ocwen both violated RICO by charging Plaintiff monthly property inspection fees each and every month since he was in default, and sending him monthly statements which included these fees beginning April 1, 2013 through September 2,

2014 until it purportedly assigned/and or sold Plaintiff's loan to Kondaur who then began servicing Plaintiff's loan. Sometimes, Ocwen and Ocwen Financial would charge Plaintiff multiple property inspection fees in the same month. It was the intent of Ocwen Financial and Ocwen to conceal these fees from Plaintiff so Ocwen Financial, Ocwen and its property inspector vendors would financially benefit from these fees being assessed to Plaintiff's loan. Ocwen Financial, Ocwen and its property inspector vendors would be guaranteed these fess only if Plaintiff's loan was sold at a foreclosure because if his loan was modified, these fees would be waived. Therefore, Ocwen Financial, Ocwen and its property inspector vendors had every incentive to not properly review and approve the Plaintiff for a loan modification prior to the foreclosure sale.

68.    Ocwen Financial and Ocwen carried out this scheme by creating a fraudulent assignment, charging bogus fees, and then purportedly selling and assigning Medrano's loan to Kondaur in a last minute attempt to avoid its duty to modify his loan which was required by the National Mortgage Settlement Act and consent orders it signed and consented to change its servicing practices.

69.    Ocwen assigned Plaintiff's loan to Kondaur, who knew it was Ocwen and Ocwen Financials plan to avoid its duty to properly review and approve the Plaintiff for a loan modification.

70.    So to avoid its duty, Kondaur agreed to service the Plaintiff's loan for a profit, which it too was guaranteed if Plaintiff's loan was sold at a sheriff sale.  Therefore, Kondaur had no intention of approving Plaintiff for modification when the application was submitted on May 24, 2015.

**THE ENTERPRISE**

71.    The following persons constitute "persons" within the meaning of 18 U.S.C. §

1961 (3). Bayview Loan Servicing, LLC ("Bayview") and Ocwen Loan Servicing, LLC ("Ocwen"), Ocwen Financial Corporation ("Ocwen Financial') Bayview Asset Management ("BAM") and Kondaur Capital Corporation ("Kondaur").

72.     Each person above was and is responsible for operating and managing the business affairs of the enterprise described herein.

73.     For instance, as alleged herein, BAM authorized Bayview and its/agents, employees to create fraudulent assignments and directed its employees through a computerized system to impose and collect improper fees through the property vendors.

74.     Ocwen Financial authorized Ocwen and its computerized system to automatically generate property inspection requests which was sent to the property inspection vendors, although no inspection was done, or if they were, they were unreasonable and unnecessary.

75.     These activities, described above, also describe the manner with which each Defendant conducted the affairs of the association in fact enterprise enumerated herein.

76.     In order to foreclose on property belonging to Medrano, Defendants employed a system that asserted demonstrably false claims, namely the documentation that Defendants relied upon to effectuate the foreclosure did not show a viable chain of title.

77.     Collectively, the Defendants constitute an enterprise engaged in and whose activities affect interstate commerce. All of the enterprises described in the presiding paragraphs are an "individual, partnership, corporation, association, or other legal entity" and are therefore valid enterprises within the definition of § 1961(3) of the RICO Act.

## PATTERN OF RACKETEERING AND PREDICATE ACTS

78.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343(relating to wire fraud). As set forth below, Defendants have engaged, and continue to engage, in conduct

violating each of these laws to effectuate their scheme.

**Bayview and BAM**

79.    The pattern of racketeering activity, as evidenced by the predicate acts, began in at least 2011, which is when Robert G. Hall who allegedly was the Vice President of Banco Popular North America knew he was signing a fraudulent assignment. Robert G. Hall has signed other assignments and release of mortgages on behalf of other companies while being employed at Bayview which were false and deceptive. Exhibit 13.

80.    In *Knowles v Bayview Loan Servicing, LLC* a case from the United States Maine Bankruptcy Court filed under Case No. 05-13492, Bayview engaged in a scheme to defraud in which it charged Ms. Knowles several property inspection fees that were unreasonable and/or unnecessary.

81.    In the Circuit Court for Oregon, under Case No. 16-12-22123, Bayview charged the Defendant Donald E. Johnson $613.50 in property inspection fees and $5,456.00 in property preservation fees which are the same fee, disguised under a different name.

82.    It is Bayview's and BAMS business practice to charge borrowers a monthly property inspection fee generated thorough Bayview's default tracking system once a borrower is 45 days delinquent and to charge them these fee each and every month as long as they are delinquent or in default.

83.    Currently, Bayview has at least over 680 loans that are more than 45 days' delinquent that are being charged monthly property inspection and /or property preservation fees.

84.    The pattern of racketeering activity has a viable threat of continuity, because Bayview and BAM continue to engage in this type of behavior on loans that it services that are in default because it is part of their financial plan.

**Ocwen Financial and Ocwen**

85.     It is Ocwen and Ocwen Financials business practice to charge borrowers who are delinquent multiple monthly property inspection fees.

86.     In Grady v Ocwen Loan Servicing, LLC 2013 U.S. Dist LEXIS 81514 (N.D. Ill., June 11, 2013, Ocwen charged the Plaintiff multiple property inspection fees which she sued Ocwen under the Fair Debt Collection Practices Act.

87.     In the National Mortgage Settlement Act, Ocwen was charged with charging borrowers monthly property inspection fees that were unreasonable and unnecessary.

88.     In 2005, a Texas jury awarded a Texas City woman $11.5 million from Ocwen Federal Bank. The jury found that Ocwen engaged in "a scheme of unfair, unlawful and deceptive business practices" in loan servicing. In 2005, *Guzman v. Ocwen*, in a Corpus Christi County Court, the jury awarded over 3 Million Dollars in settlement and found Ocwen having acted with "malice" in their criminal conduct supported by testimony adduced by two witnesses both of which were former employees of Ocwen. The evidence included making up numbers for payoffs with the numbers dreamed up so high that they insured a foreclosure posture instead of payoff, forgery of forbearance agreements, and testimony from two employees saying that the business of Ocwen is to create foreclosures by any means.

89.     The pattern of racketeering activity has a viable threat of continuity, because Ocwen Financial and Ocwen continue to engage in this type of behavior on loans that it services that are in default because it is part of their financial plan.

## VIOLATIONS OF §1341 AND §1343, MAIL AND WIRE FRAUD

90.     Defendant Bayview and Ocwen agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the scheme of defrauding Plaintiff.

91.     For purposes of executing and/or attempting to execute the above described scheme to fraudulently foreclose upon Medrano's property, the Defendants, in violation of 18 U.S.C. §1341, placed or caused to be placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial and interstate carriers, including but not limited to falsified, fraudulent, and legally defective documents.

92.     The practices described in this complaint could not have occurred without the use of the U.S. Mail and various wires including telephones and the Internet. The overwhelming majority of the evidence of these mailings and wires are in the possession of the Defendants and are not public documents. However, specific instances of such fraudulent mails and/or wires regarding Medrano's mortgage include all of the court filings that included the fraudulent assignments, the statements mailed to Medrano in all of the monthly statements that were sent from Bayview and Ocwen to Plaintiff, as well as the documents filed with the Clerk of Cook County with the intent to defraud Plaintiff.

## COUNT I
### VIOLATION OF RICO 18 U.S.C. § 1962(c)
### (Bayview, Bayview Financial, Ocwen Financial, Ocwen, Kondaur)

93.     Medrano incorporates all preceding paragraphs as if fully set forth herein.

94.     Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

95.    In violation of 18 U.S.C. §1962(c), Defendants conducted, or participated in the conduct of an enterprise through a pattern of racketeering activity and through the use of wire and mail by: 1) filing a foreclosure against Medrano despite its lack of interest in the mortgage and Note; 2) drafting and filing fraudulent mortgage assignments thus misrepresenting his loan had been properly assigned to another entity; 3) recording the assignments with the Cook County Recorder's office; 4) seeking judgment in Bayview and Ocwen's favor by relying on the assignments 5) assessing multiple property inspection and BPO fees to his account all done in part of a scheme or artifice to defraud Medrano and financially benefit the Defendants.

96.    Bayview and Ocwen prepared, executed, notarized and presented false documents in which the affiants did not have personal knowledge of the facts asserted, did not review any information or documentation to verify the assertions which is known as robo-signing.

97.    Each assignment was robo-signed a provided false information regarding the transfer of Plaintiff's loan.

98.    Defendants communicated with Medrano, with each other, and with the Cook County Court, Clerk, and Recorders office via mail, telephone, wire, and electronic mail communications within a ten-year period preceding the date of this complaint.

99.    Medrano has been injured because he has to incur attorney fees to defend the Foreclosure, his home has been sold, and he has had the fees assessed to his account based on the Defendants scheme to defraud and he has loss equity in his home.

WHEREFORE, Medrano respectfully requests that this Honorable Court grant:

(1) Statutory damages;

(2) Litigation expenses and costs of suit;

(3) Treble Damages and Punitive damages

(4) Attorney fees and

(5) Such other or further relief as the Court deems proper.

**COUNT II**
**RESPA (Dual Tracking)**
**OCWEN and KONDAUR**

100.  Medrano incorporates all preceding paragraphs as if fully set forth herein.

101.  Regulation X's loss mitigation rule limits mortgage servicers' "dual tracking" practices.

102.  Ocwen violated RESPA when a judgment was entered against Medrano and his home was sold, because he was in the process of being reviewed for loss mitigation.

103.  In violation of its obligation under Regulation X, Bayview and Ocwen failed to halt the foreclosure action with respect to Medrano being reviewed for loss mitigation.

WHEREFORE, Medrano respectfully requests that this Honorable Court grant:

(1) Statutory damages under 12 U.S.C. §2605(f);

(2) Litigation expenses and costs of suit;

(3) Attorney fees and

(4) Such other or further relief as the Court deems proper.

**COUNT III**
**CONSUMER FRAUD ACT (UNFAIRNESS)**
**OCWEN, KONDAUR and BAYVIEW**

104.  Medrano incorporates all preceding paragraphs as if fully set forth herein.

105.  Medrano meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

106.  Defendants violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.

107.  It was unfair for Defendants to assess the fees to Medrano's loan and continue dual Tracking and to unfairly review him for loss mitigation.

108.    It was unfair for Bayview to do the following:

    i.    Create fraudulent assignments;
    ii.    To allege Robert G. Hall worked for Banco Popular North America when he worked for Bayview;
    iii.    Charging and billing Medrano property inspection fees;
    iv.    And proceeding with a foreclosure without properly evaluating Medrano for loss mitigation.

109.    It was unfair for Ocwen to do the following:

    i.    To dual track;
    ii.    To assign his loan to Kondaur without properly reviewing him for loss mitigation;
    iii.    Unfairly review Medrano for a loan modification;
    iv.    Charging and billing Medrano property inspection fees;
    v.    To proceed with a foreclosure sale without properly evaluating Medrano for loss mitigation.

110.    Medrano was in constant fear and worry of losing his home and having his family displaced.

111.    It was unfair for Kondaur to not properly review Plaintiff for loss mitigation and to sell his home without sending him a denial.

112.    Defendants caused Medrano substantial damage in that, among other things: (a) Medrano was unfairly subjected to additional credit damage; (b) he was deprived of the suspension of foreclosure proceedings and his right to be evaluated for loan modifications, and thus denied the time and resources to allow him to fairly negotiate a plan to keep the home; and (c) excessive and unnecessary interest, and his home has been sold.

113.    Defendants conduct occurred in the course of trade or commerce.

114.    Defendants engaged in unfair conduct by violating the public policy of Illinois and the federal guidelines enacted by Congress. Defendants were aware Medrano was trying to save his home and failed to properly review and consider him for loss mitigation programs prior to initiating the foreclosure and conducting a sale.

115.    All of Defendants actions were the proximate cause of the damages to Medrano and he has been injured because he has incurred legal costs and fees to defend a foreclosure action, his home has been sold, and he has a judgment entered against him.

116.    An award of punitive damages is appropriate because Defendants conduct was willful, and wanton, and it showed a reckless disregard for the rights of Medrano since the foreclosure action in state court has been initiated.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

## COUNT V
## CONSUMER FRAUD ACT (DECEPTION)
## OCWEN and BAYVIEW

117.    Medrano incorporates all preceding paragraphs as if fully set forth herein.

118.    Medrano meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

119.    Defendants violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.

120.    It was deceptive for Bayview and Ocwen to assess the fees to Medrano's loan and continue dual tracking.

121.    It was deceptive for Bayview to do the following:

    i.    Create fraudulent assignments;
    ii.    To allege Robert G. Hall worked for Banco Popular North America when he worked for Bayview;
    iii.    Charging and billing Medrano property inspection fees;

        iv.    And proceeding with a foreclosure without properly evaluating Medrano for loss mitigation.

122.    It was deceptive for Ocwen to do the following:

      i.    Unfairly review Medrano for a loan modification;
     ii.    Send statements in the mail that included unlawful and deceptive fees;
   iii.    Charging and billing Medrano property inspection fees;
    iv.    To assign his loan without properly reviewing him for loss mitigation;
     v.    To proceed with a foreclosure sale without properly evaluating Medrano for loss mitigation;

123.    Medrano is in constant fear and worry of losing his home and having his family displaced.

124.    Bayview and Ocwen caused Medrano substantial damage in that, among other things: (a) Medrano was unfairly subjected to additional credit damage; (b) he was deprived of the suspension of foreclosure proceedings and his right to be evaluated for loan modifications, and thus denied the time and resources to allow him to fairly negotiate a plan to keep the home; and (c) excessive and unnecessary interest, and his home has been sold.

125.    Bayview and Ocwen's conduct occurred in the course of trade or commerce.

126.    Bayview and Ocwen engaged in unfair conduct by violating the public policy of Illinois and the federal guidelines enacted by Congress. Bayview and Ocwen was aware Medrano was trying to save his home and failed to properly review and consider him for loss mitigation programs prior to initiating the foreclosure and conducting a sale.

127.    All of Bayview and Ocwen's actions were the proximate cause of the damages to Medrano and he has injured because he has incurred legal costs and fees to defend a foreclosure action, his home has been sold, and he has a judgment entered against him.

128.    An award of punitive damages is appropriate because Bayview and Ocwen's conduct was willful, and wanton, and it showed a reckless disregard for the rights of Medrano since the foreclosure action in state court has been initiated.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

## COUNT V
## BREACH OF CONTRACT
## OCWEN and BAYVIEW

129. Medrano incorporates all preceding paragraphs as if fully set forth herein.

130. Under Illinois law, every contract implies a covenant of good faith and fair dealing.

131. Medrano has a valid and enforceable mortgage contract with Bayview and Ocwen in the form of a mortgage and note.

132. Medrano substantially performed his duties under the contract by keeping the property occupied, secure, and safe.

133. Bayview and Ocwen are in material breach of the subject note, mortgage, and loan modification for its:

a. charging of unauthorized fees and costs;

b. failure to provide accurate repayment and reinstatement figures;

c. failure to provide an accurate accounting; and

d. failure to conduct its affairs in good faith.

134. Bayview and Ocwen further breached the express terms of the subject note, mortgage, and its implied duty of good faith and fair dealing by charging and collecting unauthorized costs and fees from Medrano that were not authorized by the subject mortgage and note.

135. Bayview and Ocwen's breach of the subject contract has caused Medrano damages that consist of illegal fees, charges, interest, damage to his credit report, loss of equity in his home, emotional distress, the sale of his home, and mental anguish.

### COUNT VI
### Equal Credit Opportunity Act
### Ocwen and Kondaur

136. Plaintiff repeats and realleges paragraphs 1-146 as if fully repeated here.

137. The Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, provides: "(a) Activities constituting discrimination. It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction-- on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract) . . ."

138. Plaintiff is an applicant as defined by the ECOA. 12 C.F.R. § 202.2(e).

139. Plaintiff on many occasions as listed in detail above, Plaintiff requested and defendants offered to review Plaintiff for a loan modification.

151. Each of defendants' offers to review was a "credit transactions" under 12 C.F.R.§ 202.2(m).

152. However, defendants failed to properly review Plaintiff for a modification when Caucasians in the same or similar situation received 0modifications.

153. Defendants failed to give Plaintiff a denial letter and state the reason for the denial as required by the ECOA.

154. The failure to give Plaintiff, a Hispanic, a denial letter violated the ECOA.

155. Plaintiff will prove his claims of defendants' violations of the ECOA, in part, through a statistical analysis of defendants' loan transactions based on quantitative data obtained from defendants' loan files.

156.    For their actions as described above, defendants have violated the ECOA.

WHEREFORE, Plaintiff GUILLERMO R. MEDRANO respectfully requests that this Honorable Court:

(1)    award Medrano his actual damages to be proven at trial;

(2)    award Medrano his reasonable fees and costs; and

(3)    award Medrano other relief this Honorable Court deems equitable

and just.

**JURY DEMAND**
Medrano demands trial by jury.

Respectfully submitted,


By: /s/ Herbert Hill
One of Mr. Medrano's Attorneys


Herbert Hill
The Law Office of Herbert Hill
605 N. Broadway
Aurora, Illinois 60505
Atty No: 1214853
P:  630-742-0374