IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUILLERMO R. MEDRANO,<br><br>             Plaintiff,<br><br>      v.<br><br>OCWEN LOAN SERVICING, LLC,<br>BAYVIEW LOAN SERVICING, LLC,<br>MRF ILLINOIS, ONE LLC, and<br>BAYVIEW ASSET MANAGEMENT LLC,<br><br>             Defendants. | Case No. 16 C 898<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Defendants' Motions to Dismiss [ECF Nos. 44 and 46]. For the reasons stated herein, the Court grants the Motions and dismisses Medrano's Complaint with prejudice.

## I. BACKGROUND

Plaintiff Guillermo Medrano ("Medrano") filed this lawsuit in early 2016, complaining of conduct that took place after the Defendants in this case brought a mortgage foreclosure suit against him in the Circuit Court of Cook County. According to Medrano, the Defendants – Bayview Asset Management, LLC ("BAM"), its wholly-owned subsidiary, Bayview Loan Servicing, LLC ("Bayview"), MRF Illinois One, LLC, Ocwen Financial Corporation ("Ocwen Financial"), and its wholly-owned subsidiary, Ocwen Loan

Servicing, LLC ("Ocwen") – engaged in a series of "fraudulent assignments" of Medrano's mortgage loan. *See,* ECF No. 30 (Am. Compl.) ¶¶ 37-68, 95-97, 108, and 121. They also charged him "bogus" property inspection fees while he was in default. *Id.* ¶¶ 51, 54, 65-68, 95, 109, 121, and 133-34. To benefit from their alleged fraudulent assignments and assessment of fees, the Defendants refused to "properly review and approve Plaintiff for a loan modification." *Id.* ¶¶ 67-70. Instead, they foreclosed on and sold Medrano's mortgaged property.

Medrano contends that the Defendants' conduct runs afoul of both federal and state law. In particular, he alleges that the Defendants violated the Racketeer Influence and Corruption Organizations Act ("RICO") by fraudulently assigning his loan and charging him fees; that Ocwen violated the Real Estate Settlement Procedures Act ("RESPA") by obtaining a foreclosure judgment against him while he was being reviewed for a loan modification; and that Ocwen and Bayview discriminated against him, a Hispanic, by failing to review his application for a loan modification, thus violating the Equal Credit Opportunity Act ("ECOA"). Medrano also brings two causes of action predicated on state law.

At bottom, the gravamen of Medrano's Complaint is that the Defendants "fraudulently procured a foreclose *[sic]* judgment"

against him.  Am. Compl. ¶¶ 65, 67.  Medrano's alleged injuries stem from this foreclosure and the subsequent sale of his home pursuant to the judgment.  For example, Medrano complains that he has been harmed "because he has to incur attorney fees to defend the Foreclosure, his home has been sold, and he has had the fees assessed to his account based on the Defendants['] scheme to defraud and he has loss *[sic]* equity in his home." *Id.* ¶ 99.

Medrano is at least correct in stating that the Defendants obtained a foreclosure judgment against him.  On November 24, 2014 – more than a year before Medrano filed his current lawsuit – the Circuit Court entered a default judgment of foreclosure and sale in Medrano's case.  *See,* ECF No. 17, Ex. A ("Foreclosure Judgment").  The court characterized its judgment as "fully dispositive of the interest of all defendants," including Medrano, and found that the creditors, Defendants in this case, were owed $199,188.67.  *Id.* ¶ 2.  In accordance with the Circuit Court's order, the mortgaged property was then sold to satisfy the debt.  On October 28, 2016, while the case before this Court was pending, the Circuit Court entered a final order confirming the sale and approving of the distribution of the proceeds.  *See,* ECF No. 67, Ex. A ("Order Confirming Sale").

Medrano neither contested the Foreclosure Judgment nor appealed the Order Confirming Sale. Instead, he complains of the actions of the parties involved in his mortgage foreclosure by bringing this federal suit.

## II. **ANALYSIS**

As discussed below, the Court questions whether it has subject matter jurisdiction over Medrano's suit given the jurisdictional limitation imposed by *Rooker-Feldman.* Although the Court ultimately concludes that it has jurisdiction, it finds that Medrano's federal claims are barred by *res judicata* as a result of the judgment rendered against him in the state foreclosure case. It therefore relinquishes jurisdiction over his state-law claims and dismisses the case in its entirety. *See, Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999).

### A. **Jurisdiction**

When *Rooker-Feldman* applies to a claim, district and federal appellate courts are divested of their power to address any issue related to that claim, including *res judicata*. *See, Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir. 1996). The Court thus first looks to see if *Rooker-Feldman* bars it from hearing Medrano's case.

Simply put, *Rooker-Feldman* precludes lower federal courts from deciding claims that seek review of state-court judgments. *See, e.g., Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012). As the Supreme Court said in the cases from which the doctrine derived its name, the United States Supreme Court is the only federal court that may review such judgments. *See, Rooker v. Fid. Tr. Co.,* 263 U.S. 413, 415-16 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 n.16 (1983). However, as the Supreme Court has also explained, *Rooker-Feldman* is a narrow doctrine. *See, Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). It strips lower federal courts of their jurisdiction only where "state-court losers" bring suits "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Id.* Moreover, the "state-court losers" must be "inviting district court review and rejection of those [state-court] judgments" in their federal suits. *Id.*

Such invitations are extended both when a plaintiff seeks to set aside a state-court judgment and when his claims are "inextricably intertwined" with that judgment. *See, e.g., Brown,* 668 F.3d at 442. "The determination of whether a federal claim is 'inextricably intertwined' hinges on whether it alleges that the supposed injury was caused by the state court judgment

or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.* Moreover, the plaintiff must have had a reasonable opportunity to raise the issue in state-court proceedings. *See, id.; Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557-58 (7th Cir. 1999) ("[A]n issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.").

In this case, Medrano does not contest that his claims are "inextricably intertwined" with the Circuit Court's foreclosure judgment. This is because the injuries Medrano complains of – the attorney fees expended to defend the foreclosure suit, the debt deemed owing to the Defendants, and the sale of the home to satisfy that debt – all flow from the court's judgment.

The Circuit Court determined the amount of the debt and ordered the sale of the home. The debt assessment and the loss of the property are thus injuries caused by the court. *See, Schuh v. Druckman & Sinel, L.L.P.*, 2008 U.S. Dist. LEXIS 15079, at *19-22 (S.D.N.Y. Feb. 29, 2008) (noting that the plaintiffs "do not allege that the defendants unilaterally commandeered the title to their home [or] put the property up for auction. . . . Rather, these events occurred as a result of the judgment of

foreclosure being entered against plaintiffs"); *Spencer v. Mortg. Acceptance Corp.,* No. 05 C 356, 2006 U.S. Dist. LEXIS 31668, at *12-15 (N.D. Ill. May 4, 2006) (concluding that the plaintiff's claims arose from the foreclosure judgment entered against her because "her claimed injury in the present matter is the loss of the Property at a judicial sale").

As for the attorney's fees, the Seventh Circuit has said that in circumstances like these, "[t]he need to litigate was not a loss independent of the state court's decision." *Harold v. Steel,* 773 F.3d 884, 886-87 (7th Cir. 2014). Medrano here alleged that the Defendants "fraudulently assigned" his loan, implying that they did not own the loan when they instituted the foreclosure suit against him. If the allegation is true, then Medrano, like the plaintiff in *Harold,* "was entitled to a decision in his favor." *Id.* Therefore, "[n]o injury occurred until the state judge ruled against [the plaintiff]." *Id.*

Furthermore, the injuries caused by the Circuit Court's judgment subsume other wrongs Medrano alleged. For instance, the amount of money that the Circuit Court determined was owed to the Defendants presumably included the property inspection fees that Medrano calls "bogus," "improper," or "excessive." Similarly, the foreclosure sale that the court ordered mooted

Medrano's application for a loan modification and extinguished any equity he had in the property.

Medrano also had reasonable opportunity to raise the issues in state court. For example, Illinois law allows for fraud to be pleaded as a defense in a foreclosure action. *See, Henry v. Farmer City State Bank,* 808 F.2d 1228, 1235 (7th Cir. 1986) ("The Henrys' allegations of fraud and forgery, if substantiated, would have been a complete defense to the foreclosure proceedings."); *Bartucci v. Wells Fargo Bank N.A.,* No. 14 CV 5302, 2016 U.S. Dist. LEXIS 38864, at *11 (N.D. Ill. Mar. 24, 2016) ("Plaintiff was entitled to raise any claims as to fraud in the state foreclosure action."). Medrano thus was able to bring his claim of fraudulent assignments to fight the foreclosure. *See, e.g., Sheikhani v. Wells Fargo Bank,* 526 F. App'x 705, 707 (7th Cir. 2013) ("[N]o state law prevented a challenge in the foreclosure proceedings to the validity of the assignment to Wells Fargo."). He did not and instead complains of injuries caused by the foreclosure here. In such circumstances, the first prong of *Rooker-Feldman* – invitation to review and reject a state-court judgment – is satisfied.

Nonetheless, Medrano argues that *Rooker-Feldman* does not apply because he "filed the present action while the[] state-court proceedings were still pending" and Plaintiff "still ha[s]

an appeal pending." Medrano's contention that he has a pending appeal in state court is puzzling. There is no appeal on the record of Medrano's foreclosure case, pending or otherwise. It is true, however, that Medrano commenced this lawsuit before the state court issued its Order Confirming Sale, even if the suit was filed after the Foreclosure Judgment.

Illinois law is clear that absent special certifying language, a judgment of foreclosure is an interlocutory order that cannot be appealed. *See, EMC Mortg. Corp. v. Kemp,* 367 Ill. Dec. 474, 476 (2012). This is because "although a judgment of foreclosure is final as to the matters it adjudicates, a judgment foreclosing a mortgage, or a lien, determines fewer than all the rights and liabilities in issue." *Id.* After a foreclosure judgment is issued, a mortgagor like Medrano still has the opportunity to redeem the property from the foreclosure or reinstate the mortgage by "curing all defaults." *See,* ILCS 735 ILCS 5/15-1602, 5/15-1603; *HSBC Bank USA, N.A. v. Townsend,* 793 F.3d 771, 775 (7th Cir. 2015). Even after the property has been sold, the state court still may "vacate the judicial sale and, in rare cases, the underlying judgment." *Id.* at 777 (quoting *Wells Fargo Bank, N.A. v. McCluskey,* 376 Ill. Dec. 438, 445-46 (2013)). However, the law is not as clear on whether

interlocutory, nonappealable rulings like foreclosure judgments are outside of the scope of *Rooker-Feldman*.

Two Seventh Circuit opinions are in tension with each other when it comes to this question. In *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005), the court held that "an interlocutory ruling does not evoke the [*Rooker-Feldman*] doctrine or preclude federal jurisdiction." The holding has been questioned elsewhere in this circuit, albeit only in *dicta*. As Judge Easterbrook said in writing for the court in *Harold,* 773 F.3d at 885-86, "[t]he principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation is as applicable to interlocutory as to final state-court decisions." *Id.* at 886.

Courts relying on either *TruServ* or *Harold* have come to differing conclusions about whether a district court may exercise jurisdiction in a case like Medrano's. A vast majority of courts in our district have leaned on *TruServ* and found that *Rooker-Feldman* does not apply when the federal suits commenced before the state courts issued the orders confirming sale. *See, Hodges v. CIT Grp. (In re Hodges),* 350 B.R. 796, 801-03 (Bankr. N.D. Ill. 2006) ("*Rooker-Feldman* does not deprive this court of jurisdiction. . . . The state court had entered a judgment of foreclosure, true enough. But a judgment of foreclosure does not

end a mortgage foreclosure case in Illinois."); *Vangsness v. Deutsche Bank Nat'l Tr. Co.*, No. 12 C 50003, 2012 U.S. Dist. LEXIS 169388, at *3-5, *8 (N.D. Ill. Nov. 29, 2012); *Garavito v. Suntrust Mortg., Inc.*, No. 11 C 6056, 2013 U.S. Dist. LEXIS 30192, at *3, *8 (N.D. Ill. Mar. 6, 2013); *Andrews v. CitiMortgage, Inc.*, No. 13 C 8513, 2014 U.S. Dist. LEXIS 77114, at *2-3 (N.D. Ill. June 6, 2014) (Leinenweber, J.); *Vazquez v. J.P. Morgan Chase Bank, N.A.*, No. 13-cv-04749, 2014 U.S. Dist. LEXIS 124802, at *10-11 (N.D. Ill. Sep. 8, 2014); *Bolden v. Wells Fargo Bank, N.A.*, No. 14 C 403, 2014 U.S. Dist. LEXIS 161521, at *7 (N.D. Ill. Nov. 18, 2014); *Schuller v. Am.'s Wholesale Lender*, No. 14 C 4097, 2015 U.S. Dist. LEXIS 119464, at *6 (N.D. Ill. Sep. 9, 2015); *Berry v. Wells Fargo Bank N.A.*, No. 15 C 5269, 2015 U.S. Dist. LEXIS 166660, at *6-7 (N.D. Ill. Dec. 14, 2015); *Lihter v. Pierce & Assocs.*, No. 16 C 50080, 2016 U.S. Dist. LEXIS 123788, at *5-6 (N.D. Ill. Sep. 13, 2016).

But adherence to *Truserv* has not been uniform. Some judges have found that district courts have no jurisdiction to hear a case where a foreclosure judgment was issued before the filing of the federal suit. *See, Carpenter v. PNC Bank, N.A.,* 633 F. App'x 346, 347 (7th Cir. 2016); *Taylor v. Fannie Mae,* 374 F.3d 529, 532-36 (7th Cir. 2004); *Byrd v. Homecomings Fin. Network,* 407 F.Supp.2d 937, 940-41, 943-44 (N.D. Ill. 2005). For

example, in *Carpenter,* 633 F. App'x at 347, the appellate court recognized that "Carpenter's [foreclosure] judgment may not yet be appealable under state law." But relying on *Harold,* the court concluded that "that distinction does not help Carpenter here" and applied *Rooker-Feldman* to bar her federal suit. *See also, Garavito,* 2013 U.S. Dist. LEXIS 30192, at *11-13 (reasoning that "the purposes behind the *Rooker-Feldman* doctrine would be served by allowing an Illinois foreclosure judgment to satisfy the finality requirement" but declining to apply *Rooker-Feldman* because of *TruServ*).

It appears then that whether *Rooker-Feldman* applies in a case like this one is an unsettled issue in this circuit. Arguments can be made on both sides, but in this Court's best judgment, *Rooker-Feldman* bars the lawsuit here. *Carpenter* is the latest Seventh Circuit opinion on the issue, and it is directly on point. Moreover, the Court is persuaded by the reasoning behind Judge Easterbrook's dictum that *Rooker-Feldman* should apply to interlocutory and final orders alike: "A truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final." *Harold,* 773 F.3d at 886 (emphasis in original).

The Court recognizes that it has taken a contrary position previously. *See, Andrews,* 2014 U.S. Dist. LEXIS 77114, at *2-3.

However, that ruling preceded the issuance of *Harold*. Since having the benefit of *Harold,* the Court has indicated its agreement with Judge Easterbrook on this issue. For instance, the Court stated in its oral ruling in *Frencher v. Caliber Home Loans,* No. 16 C 01550, Dec. 7, 2016, that the disputed issue was "foreclosed from review by this Court by the *Rooker-Feldman* doctrine . . . because the state court's ruling was interlocutory and not subject to review in any court."

In short, the Court finds that *Rooker-Fedlman* bars it from exercising jurisdiction in this case. It thus dismisses Medrano's Complaint with prejudice on FED. R. CIV. P. 12(b)(1) grounds.

**B. Preclusion**

Although the Court concludes that it does not have subject matter jurisdiction in this case, given the uncertainty in Seventh Circuit case law surrounding the issue, the Court next considers whether Medrano's claims are barred by *res judicata* as a result of the foreclosure judgment. Since an Illinois state court rendered the judgment against Medrano, the Court consults the preclusion law of Illinois to determine whether *res judicata* applies. *See, Arlin-Golf, LLC v. Vill. of Arlington Heights,* 631 F.3d 818, 821 (7th Cir. 2011). Under Illinois law, the doctrine acts as a bar to subsequent claims when: "(1) there

was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park v. City of Highland Park,* 184 Ill. 2d 290, 302 (1998).

Identical parties or their privies are present in this federal lawsuit and the state-court action. Medrano was a defendant in the foreclosure action, and he is the Plaintiff here. The Defendants he sues in this case – Bayview, BAM, Ocwen, Ocwen Financial, and MRF Illinois One – were the plaintiffs or plaintiffs' privies in Medrano's foreclosure case. Bayview, a wholly-owned subsidiary of BAM, filed the complaint to foreclose on Medrano's property. Am. Compl. ¶¶ 7, 39. Bayview then transferred the right to service the loan to Ocwen, a wholly-owned subsidiary of Ocwen Financial. Am. Compl., Ex. 8. Ocwen subsequently requested that MRF Illinois One be substituted as a party plaintiff in Medrano's foreclosure case. *Id.* The parties in this case thus are identical to those in the foreclosure action.

In addition, the Circuit Court of Cook County, a court of undisputed competent jurisdiction in the foreclosure matter, rendered a final judgment on the merits when it entered the Order Confirming Sale. *See, Kemp,* 367 Ill. Dec. at 476 (holding

that the order confirming sale is a "final and appealable order in a foreclosure case"). The fact that the Order Confirming Sale was issued after Medrano commenced his federal suit does not put his action outside the scope of *res judicata,* unlike the situation with *Rooker-Feldman*. *See, GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) ("Equating the *Rooker-Feldman* doctrine with preclusion is natural. . . . But the two are not coextensive."); *Exxon Mobil,* 544 U.S. at 284 ("*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . ."). A court may decline to apply *Rooker-Feldman* and yet find that *res judicata* precludes a case like Medrano's where the order confirming the foreclosure sale was issued between the filing of the federal lawsuit and the time the district court makes its ruling. *Lihter,* a case decided in this district just last year, did exactly that. *See, Lihter,* 2016 U.S. Dist. LEXIS 123788, at *5-7.

Medrano nonetheless argues that "there has been no final judgment on the merits in the Foreclosure Action because the time for an appeal has not ended." But this is factually incorrect. The time for an appeal ended on November 28 of last year, 30 days from the date of the entry of the Order Confirming Sale. *See,* 735 ILCS 5/2-1401. There was no appeal filed within the permissible 30-day period; in fact, there has been no appeal

filed at all by the writing of this memorandum opinion.  Thus, however unsettled "the law of Illinois [may be] on the question of whether a pending appeal destroys the claim preclusive effect of a judgment," the issue matters not one bit for Plaintiff's case.  *Rogers v. Desiderio,* 58 F.3d 299, 302 (7th Cir. 1995).  In this case, the Order Confirming Sale is the final judgment.

Accordingly, Medrano's claims are barred by *res judicata* if there is an identity of cause of action between those claims and his foreclosure lawsuit.  To determine whether there is such an identity, this Court employs the transactional analysis used in Illinois whereby "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."  *River Park,* 184 Ill. 2d at 311.  The claims so considered include those "based on facts which could have constituted a defense or counterclaim to a prior proceeding if the successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."  *Henry,* 808 F.2d at 1232 (internal quotation marks omitted).  In short, "the law of claim preclusion in Illinois . . . precludes the sequential pursuit not only of claims actually litigated, but of those that could

have been litigated." *Dookeran v. Cty. of Cook,* 719 F.3d 570, 576 (7th Cir. 2013) (internal quotation marks omitted).

The Court considers Medrano's claims one by one to determine whether they are barred. Medrano's RICO claim is centered on the allegations that the Defendants committed fraud in handling his mortgage loan. *See,* Am. Compl. ¶¶ 65-70 (tiled "RICO Allegations, Scheme to Defraud"). But, as evidenced by the default foreclosure judgment entered against him, Medrano did not raise any such allegations of fraud in state court. Under such circumstance, the Seventh Circuit has found that the plaintiff's RICO claim is precluded by *res judicata*.

In *Henry,* 808 F.2d at 1230-31, the Henrys defaulted on their mortgage. The bank sued for foreclosure and won. *Id.* The Henrys then instituted suit in the district court. Like Medrano, they alleged that the bank and others "had engaged in a [] scheme of racketeering activity to defraud . . . through use of the mails and interstate wires". *Id.* at 1231; Am. Compl. ¶¶ 65-92. Their case was dismissed, and the Henrys appealed. On appeal, the Seventh Circuit found that the district court should not even have reached the question of whether the plaintiffs stated a cause of action under RICO. *Henry,* 808 F.2d at 1232. The Henrys' RICO claims, held the court, "are barred by the doctrine of *res judicata* because they failed to raise

their fraud claims as a defense in the state court mortgage foreclosure proceedings initiated by the Bank." *Id.*

The Seventh Circuit found the reasoning of *Henry* equally applicable where a plaintiff failed to defend the previous action and consequently, had a default judgment entered against him. *See, Whitaker v. Ameritech Corp.*, 129 F.3d 952, 957 (7th Cir. 1997) ("The fact that Whitaker failed to defend her case does not alter this analysis [of *Henry*] because a default judgment in Illinois is a judgment on the merits and has the same preclusive effect as a judgment resulting from arduous litigation"). *Henry* and *Whitaker* thus teach that where allegations of fraud "go to the heart" of a previously decided case and yet the plaintiff did not raise them, the plaintiff is thereafter precluded from bringing a RICO claim based on such allegations.

These two cases control here. In his RICO claim, Medrano complains that the Defendants "fraudulently procured a foreclose *[sic]* judgment" against him. Such allegations "go to the heart of what was decided in the state court," namely that far from committing fraud, the Defendants were legitimately owed a sum of money and that Medrano's house properly was sold to satisfy that debt. *Whitaker*, 129 F.3d at 957. Any cognizable argument to the contrary, including that the Defendants were committing

fraud in pursuing foreclosure against Medrano, should have been raised in the foreclosure action. Medrano cannot be allowed to bring such arguments now "in the disguise of civil RICO claims in federal court." *Henry,* 808 F.2d at 1237.

Medrano's RESPA and ECOA claims fare no better. The allegations underlying both of these claims are that the Defendants failed to "properly review" Medrano's application for a loan modification and instead foreclosed on and sold his home. *See,* Am. Compl. ¶¶ 101-03, 152-53. However, Medrano should have raised such arguments in the foreclosure action since they clearly affected whether the Defendants may foreclose on his home. He did not. His claims now are barred by his failure then. *See, e.g., Bartucci,* 2016 U.S. Dist. LEXIS 38864, at *9 (dismissing an ECOA claim when "Plaintiff was entitled to raise his HAMP [Home Affordable Modification Program] argument" in state court but did not); *Ruffino v. Bank of Am., N.A.*, No. 13 C 50124, 2013 U.S. Dist. LEXIS 143151, at *1-4, *10-11 (N.D. Ill. Oct. 3, 2013) (dismissing a RESPA claim when the plaintiff alleged that the bank "did not have a right to initiate the foreclosure proceeding against plaintiff"); *Downs v. OneWest Bank, FSB,* 2015 IL App (5th) 140086-U, ¶ 17 ("The key allegations in Downs's lawsuit against the Bank were that the Bank violated the terms of the mortgage, did not own the

mortgage, and failed to follow proper mortgage foreclosure procedures.  She could have presented (and logically should have presented) her evidence and her arguments on those matters during the foreclosure action. . . .  However, Downs did not bother to appear and contest the foreclosure. . . .  The doctrine of *res judicata* clearly barred her lawsuit.").

### III. CONCLUSION

For the reasons stated herein, the Defendants' Motions to Dismiss [ECF Nos. 44 and 46] are granted.  Plaintiff's Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: January 31, 2017